Commonwealth *v.* Disler.

# COMMONWEALTH *vs.* RICHARD DISLER.

Essex. September 4, 2007. - April 18, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Enticement of Minor. Statute,* Construction. *Electronic Mail. Intent. Due Process of Law,* Vagueness of statute. *Constitutional Law,* Freedom of speech and press, Freedom of association, Probable cause, Waiver of constitutional rights. *Search and Seizure,* Computer, Probable cause, Warrant. *Entrapment. Words,* "Entice."

The plain meaning of the child enticement statute, G. L. c. 265, § 26C, requires, in addition to enticing words or gestures, that the person who entices does so with the intent to violate one or more of the enumerated criminal statutes; therefore, no further overt action was required to complete the crime where a defendant exchanged a series of electronic "instant messages" with undercover police officers who were posing as a fourteen year old girl, with the purpose of inviting the girl to his residence for sexual encounters, regardless of the fact that the girl did not actually exist. [221-223]

General Laws c. 265, § 26C, the child enticement statute, is not unconstitutionally vague, as it gives fair notice of the proscribed conduct, which reasonable readers of the statute would understand to include Internet instant message conversations undertaken with the intent to do one of the enumerated criminal acts. [223-224]

General Laws c. 265, § 26C, the child enticement statute, does not suppress free speech in violation of the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, where, rather than prohibiting specific words, the statute, in furtherance of the compelling State interest in protecting children from exploitation, forbids persons possessing the requisite intent to violate one of the enumerated criminal statutes from enticing a child, or someone the individual believes to be a child, toward that end. [224-225]

Principles of statutory construction favored an interpretation of G. L. c. 265, § 26C, the child enticement statute, that avoided unconstitutional overbreadth by resolving any potential ambiguity in the statute so as to require the Commonwealth to prove that the defendant, in enticing a child, or someone who he believed to be underage, intended to commit one of the enumerated criminal offenses, even though several of those offenses are so-called strict liability crimes. [225-229]

There was no merit to a criminal defendant's argument that the child enticement statute, G. L. c. 265, § 26C, created unconstitutional burden shifting, where the burden of proving the defendant's criminal intent always remained on the Commonwealth. [229]

A criminal defendant who solicited sexual activity with an underage girl over the Internet had no claim that his prosecution under the child enticement statute, G. L. c. 265, § 26C, based on such conduct violated his constitutionally protected right to free association. [230]

Evidence consisting of explicit statements the criminal defendant directed over the Internet to someone he believed (as the judge was warranted in finding) to be a fourteen year old girl about the sexual acts he wanted to perform on her sufficed to convict the defendant of child enticement in violation of G. L. c. 265, § 26C. [230-231]

The criminal defendant's own "instant messages" admitting to his sexual activities with underage girls, combined with the timing of his Internet messages to a particular person whom he believed to be underage, sent to solicit a sexual encounter with her, provided probable cause to support a search warrant for computers and storage media at his home. [231-232]

There was no merit to a criminal defendant's claim that he never saw a copy of the search warrant that police officers executed at his home. [232]

A Superior Court judge properly denied the criminal defendant's motion to suppress statements made by the defendant after he had been handcuffed by police executing a search warrant at his home, where the defendant's waiver of the Miranda warnings he received was knowing, intelligent, and voluntary, and where his handcuffing was proper and temporary. [232]

At the trial of a charge of child enticement in violation of G. L. c. 265, § 26C, the judge properly denied the criminal defendant's motion for a judgment of acquittal on the ground that the police entrapped him, where the Commonwealth easily met its burden of proving the defendant's predisposition by means of the defendant's Internet exchanges with a woman who brought him to the attention of police, in which the defendant admitted to molesting children and invited the woman to share in his sexual exploits with children. [232-233]

INDICTMENT found and returned in the Superior Court Department on August 27, 2003.

A pretrial motion to suppress evidence was heard by *Thomas P. Billings*, J.; two additional pretrial motions to suppress evidence were heard by *Peter W. Agnes, Jr.*, J.; a motion to dismiss the indictment was heard by *Howard J. Whitehead*, J.; and the case was heard by *Patrick J. Riley*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*James B. Krasnoo* for the defendant.

*Kenneth E. Steinfield*, Assistant District Attorney, for the Commonwealth.

*Claudia Leis Bolgen*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

IRELAND, J. This case requires us to interpret, for the first time, G. L. c. 265, § 26C, the child enticement statute. In September, 2005, following a bench trial, the defendant was found guilty of one indictment charging child enticement. His conviction was based on a series of electronic "instant messages" he exchanged with undercover police officers who were posing as a fourteen year old girl. The defendant was sentenced to probation for three years, prohibited from having unsupervised contact with children under the age of sixteen, and required to register as a sex offender. He appealed and we granted his application for direct appellate review.

The defendant argues that the statute is unconstitutional; that it was impossible to convict him because no child under sixteen years of age actually existed; that there was insufficient evidence to convict him; and that certain statements he made were erroneously admitted in evidence. He also argues that he was entrapped. Because we conclude that the statute, when correctly interpreted, is constitutional, and there is no merit to his other claims of error, we affirm the conviction.[1]

*Facts.* We recite the essential facts from the defendant's trial, reserving certain details for our discussion of the issues. The defendant came to the attention of police when a woman from Haverhill reported that someone using an Internet "chat room" through America Online (AOL),[2] contacted her and told her, in essence, that he wanted to have sex with young children. He invited the woman to participate. He told the woman that he was forty-three years old and had had sexual contact with a number of children in the past.[3] In May, 2003, the woman brought computerized printouts of the conversations she had had with the

---

[1]We acknowledge receipt of the amicus brief of the Committee for Public Counsel Services.

[2]America Online is a national service offering access to the Internet. *Reno* v. *American Civil Liberties Union*, 521 U.S. 844, 850-851 (1997).

[3]This occurred through "instant messaging," which is "a form of computer communication in which individuals hold an online conversation via the [I]nternet. . . . [The] message is transmitted instantaneously . . . allow[ing] both parties . . . to respond immediately." *State* v. *Lott*, 152 N.H. 436, 437 (2005), quoting *State* v. *Bouse*, 150 S.W.3d 326, 329 n.2 (Mo. Ct. App. 2004). Unless otherwise specified, all of the conversations at issue in this case occurred through instant messaging.

We need not detail the sexually explicit content of the defendant's Internet

defendant to the police department in North Andover, where the defendant claimed to live. A North Andover detective contacted Detective John McLean of the Medford police department. McLean was a member of the computer crime unit of the North Eastern Massachusetts Law Enforcement Council[4] and Medford police had an untraceable, "undercover computer" as well as a fully functional computer forensic laboratory.

McLean, pretending to be a fourteen year old named "Sara," went to the AOL chat room and initiated the first of eight Internet conversations with the defendant. In some of the conversations that followed, other officers posed as Sara.[5] It was the fifth conversation, which occurred on June 3, 2003, for which the defendant was indicted. Some of the others were also introduced in evidence, however, to demonstrate the defendant's belief about Sara's age and his criminal intent.

In the four conversations leading up to the conversation of June 3, 2003, Sara repeatedly told the defendant that she was fourteen years old. In the course of the conversations, the defendant asked if she had pubic hair, mentioned her virginity, said that he liked girls her age, and discussed Sara's menstruation.[6] In addition, in the June 3 conversation, the defendant described the specific sexual acts that he wished to perform on her once they met, including digital and oral penetration of her vagina,

conversation with this woman. It suffices to say that the woman feigned interest in children to gauge the defendant's intentions. At first she thought that the defendant was joking. She then created a new screen name for herself and pretended to be a twelve year old girl, reentered the same AOL chat room using the new screen name, and initiated a conversation with the defendant. That exchange also was sexually explicit, with the defendant suggesting that they could meet and watch a movie together while naked in bed. At that point she reported the matter to the police.

[4]The North Eastern Massachusetts Law Enforcement Council is a consortium representing forty-six cities and towns in Middlesex and Essex counties that is devoted to issues involving "cyber crime." See *Reno* v. *American Civil Liberties Union, supra* at 851 (describing modes of interpersonal communication on Internet, including electronic mail and chat rooms, "known to its users as 'cyberspace' ").

[5]All but one conversation between Sara and the defendant were initiated by the police.

[6]In conversations after the June 3 conversation, the defendant told Sara that he liked girls her age because he could teach them, and he again discussed Sara's menstruation as well as the menstruation of twelve and fifteen year old girls he claimed had visited him at his home in the past.

which, he explained, would enable her to remain a virgin and not get pregnant.[7]

Sara told the defendant she lived in Medford. At trial, the defendant admitted that he "constantly" asked her to meet him in his automobile at the Wellington subway station. His invitations for Sara to meet him began in their first conversation. He told Sara where his vehicle would be parked and said he would be there in forty minutes. He described his vehicle as a black Lexus sports utility vehicle. He also revealed that he lived in North Andover, off Route 114, and gave her his telephone numbers at home and at work.[8] In their second conversation, the defendant asked Sara to meet him at his car at 5:30 that evening, and the next day, in their third conversation, he stated that he was "mad" that she did not show up. In their fourth conversation, the defendant asked Sara to meet him at the station or a CVS store nearby, and said that he would drive her to his house and sneak her inside.

The fifth conversation, on June 3, began by Sara stating that she was worried that the defendant was "mad" because she did not meet him the day before. The defendant did not say that he had not waited for her. In that conversation, he asked Sara if she wanted "to come over" to his house because he was home from work, and said that he would drive her to his house like he had other girls. Later in the conversation, the defendant said that it would be "tough tonight" to meet, and he proposed that Sara come to his house "maybe next Monday or Tuesday." The defendant said they would have to do everything "secretly." Sara sent the defendant what she said was a picture of herself (with the face obscured) and reiterated that she was fourteen years old.

On June 5, the day after the eighth conversation between the defendant and Sara, police executed a search warrant at the defendant's home, seizing, among other things, a computer belonging to the defendant. They also arrested the defendant. Several statements the defendant made to police after his arrest were admitted against him at his trial.

[7] During this time, the defendant also remained in contact with the woman from Haverhill. He informed her that he had found Sara and another girl, who in fact was the fictitious twelve year old that the woman herself had created.

[8] Police confirmed that the defendant did own a black Lexus vehicle and lived in North Andover, and that the telephone numbers were his.

The defendant did not deny that he had participated in these online conversations. He testified, however, that he never believed that Sara was in fact a child, that he was "playing along" and "role playing" in all of these conversations, including the conversations with the woman from Haverhill, and that he was just trying to find out who Sara was so that she would leave him alone. He testified that he had no intention of ever actually meeting Sara. He claimed that he included sexually explicit questions and references to explicit sexual acts in his messages to Sara in order to get her to leave him alone or tell him who she really was. On cross-examination, the defendant admitted that he never asked Sara who she really was and never "blocked" her ability to send him messages. The defendant also presented witnesses who testified to his reputation for honesty in the community. Further, the defendant and his father and brother testified regarding the execution of the search warrant at his home and his statements to police, discussed *infra.*

*Discussion.* General Laws c. 265, § 26C, provides:

> "(*a*) As used in this section, the term 'entice' shall mean to lure, induce, persuade, tempt, incite, solicit, coax or invite.

> "(*b*) Any one who entices a child under the age of 16, or someone he believes to be a child under the age of 16, to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space with the intent that he or another person will violate section 13B, 13F, 13H, 22, 22A, 23, 24 or 24B of chapter 265, section 4A, 16, 28, 29, 29A, 29B, 29C, 35A, 53 or 53A of chapter 272, or any offense that has as an element the use or attempted use of force, shall be punished by imprisonment in the state prison for not more than 5 years, or in the house of correction for not more than 2½ years, or by both imprisonment and a fine of not more than $5,000."

a. *Adequacy of "merely sending words."* The defendant first argues that he could not have been convicted of child enticement because he "simply never engaged in conduct beyond merely sending words over the Internet." He contends that the statute requires something more, i.e., an overt act such as traveling to an agreed rendezvous location. We disagree.

"When the language of a statute is plain and unambiguous, it must be given its ordinary meaning." *Commonwealth* v. *Brown*, 431 Mass. 772, 775 (2000). The Legislature has provided that, when interpreting statutes, "[w]ords and phrases shall be construed according to the common and approved usage of the language . . . ." G. L. c. 4, § 6, Third. Here, G. L. c. 265, § 26C (*a*), defines "entice" to mean lure, induce, persuade, tempt, incite, solicit, coax, or invite, each of which, according to the commonly accepted meaning of the term, can be accomplished by words (spoken or written) and nothing more. There is nothing in the language of either subsection (*a*) or subsection (*b*) that supports the defendant's contention that, in addition, there must be an overt act in order for the crime of child enticement to occur.[9] However, while the statute does not require any further *action* by the person doing the enticing, or any type of agreement, reliance, or other *action* on the part of the person who receives the enticement, it does in fact require more than what the defendant characterizes as "merely sending words." What the statute does require in addition to enticing words or gestures, and indeed what we conclude is needed to ensure that constitutionally protected communications are not criminalized by the statute, is that the person who entices does so *with the intent to violate one or more of the enumerated criminal statutes*; in other words, that the person who entices does so with a criminal mens rea. In sum, the crime of child enticement is complete when an individual, possessing the requisite criminal intent as set forth in subsection (*b*) and discussed in greater detail below, employs words, gestures, or other means to entice (or lure, induce, persuade) someone who is under the age of sixteen, or whom the actor believes is under the age of sixteen, to enter or remain in a vehicle, dwelling, building, or outdoor space.[10] See *Rambert* v. *Commonwealth*, 389 Mass. 771, 773 (1983) ("The language of a

---

[9] In a similar vein, the defendant claims that he set no time or place to meet Sara. There was evidence that he did do so by asking her to come to his house on June 3, 2003. Sara already knew that the defendant's house was located off Route 114 in North Andover.

[10] We need not address other issues the defendant raises to the extent that they are premised on his erroneous assumption that "merely sending words" does not constitute a violation of the statute.

statute is not to be enlarged or limited by construction unless its object and plain meaning require it").[11]

Moreover, it is of no consequence that Sara was not a real person, because "factual impossibility is not a defense to a crime." *Commonwealth* v. *Bell*, 67 Mass. App. Ct. 266, 271 (2006), citing *Commonwealth* v. *Peaslee*, 177 Mass. 267, 272 (1901), and *Commonwealth* v. *Kennedy*, 170 Mass. 18, 22 (1897) (holding that fact that undercover officer pretended to have child available for defendant, and did not in fact have such child, was no defense to crimes).

b. *Constitutionality of statute.* The defendant asserts several arguments concerning the constitutionality of the statute. He argues that the statute is unconstitutionally vague because it fails to give a reasonable person notice that an Internet instant message conversation can give rise to criminal liability. We disagree. A statute violates due process and is void for vagueness when individuals of normal intelligence must guess at the statute's meaning and may differ as to its application, thus denying them fair notice of the proscribed conduct. *Commonwealth* v. *Freiberg*, 405 Mass. 282, 288-289, cert. denied 493 U.S. 940 (1989), and cases cited. Further, vague statutes may invite "arbitrary and erratic arrests and prosecutions," which also offends due process. *Commonwealth* v. *Quinn*, 439 Mass. 492, 499 (2003), quoting *Commonwealth* v. *Sefranka*, 382 Mass. 108, 110 (1980). Here, the child enticement statute expressly defines "entice" to mean lure, induce, persuade, tempt, incite, solicit, coax, or invite. These words have commonly accepted and readily understood meanings in the English language. It does not require guesswork to determine whether any given words or gestures — whether they are communicated orally or in writing, in person or through electronic means — viewed in context will fit within the meaning of these terms. It requires no elaborate discussion to "conclude that a person of ordinary

[11]Other criminal statutes similarly require nothing more than words or gestures. See, e.g., *Commonwealth* v. *Sholley*, 432 Mass. 721, 724-725 (2000), cert. denied, 532 U.S. 980 (2001), and cases cited (affirming conviction pursuant to G. L. c. 275, § 2, of threatening to commit a crime; words considered in context); *Commonwealth* v. *Barsell*, 424 Mass. 737, 738 (1997) (discussing crime of solicitation of another to commit a felony or other aggravated offense).

intelligence would properly be on notice" concerning the prohibited conduct. *Commonwealth* v. *Clemmey*, 447 Mass. 121, 139 (2006). Further, because the enticing words or gestures must be accompanied by the requisite criminal intent set forth in subsection (*b*) of the statute, the statute provides a sufficiently clear forewarning of what it proscribes and adequate guidelines for law enforcement purposes. *Commonwealth* v. *Quinn*, *supra* at 499-500. Reasonable readers of the statute will see that it does not criminalize the mere sending of sexually explicit messages over the Internet, even sexually explicit messages to minors. Rather, when subsections (*a*) and (*b*) are read together, it is readily apparent that the statute only criminalizes such messages that lure, induce, persuade, tempt, incite, solicit, coax, or invite the recipient to take certain action (e.g., to enter a house or an automobile), *if the messages are accompanied by the sender's intent to do one of the enumerated criminal acts.*

The defendant also argues that the statute violates his constitutionally protected right of free speech under the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights. He states that the statute suppresses speech because it forbids a defendant from speaking or writing words that may entice a minor, where the same words would be legal and constitutionally protected if directed toward an adult. We disagree.

The statute surely does not prohibit specific words. It also does not ban anyone from communicating with adults or minors about sexual topics, even through indecent language.[12] Contrast *Ashcroft* v. *American Civil Liberties Union*, 542 U.S. 656, 663, 670-671 (2004) (holding unconstitutional statute criminalizing indecent Internet speech, which was designed for protection of children, because its reach encompassed constitutionally protected speech between adults). Sending a message to a child describing a person's prior sexual acts with other children could not by itself violate this statute. See *Benefit* v. *Cambridge*, 424 Mass. 918, 924 (1997) (holding that "begging" statute was impermissibly content based and implicated protected speech,

---

[12]We do not address here other statutes that may forbid adults from talking with minors in an indecent fashion.

where guilt or innocence under statute depended on content of words spoken).

What the child enticement statute forbids is anyone *who possesses the requisite intent to violate one of the enumerated criminal statutes* from enticing a child, or someone the individual believes to be a child, toward that end. *Commonwealth* v. *Bean*, 435 Mass. 708, 711 (2002) ("Absent the element of 'lascivious intent,' the statute [prohibiting photographing minors in the nude] is constitutionally overbroad"). *Commonwealth* v. *Provost*, 418 Mass. 416, 421 (1994), citing *Commonwealth* v. *Oakes*, 407 Mass. 92, 96-97 (1990) (taking photographs of nude child with lascivious intent is "conduct"; recognizing governmental interest in suppressing such conduct unrelated to expression). "[S]peech is merely the vehicle through which a pedophile ensnares the victim." *United States* v. *Meek*, 366 F.3d 705, 721 (9th Cir. 2004). Because the Commonwealth must prove not only that the child was enticed (or lured, induced, persuaded), but also that the defendant enticed the child with the intent to commit one of the enumerated criminal offenses, "the conduct is appropriately prohibited in light of the compelling State interest in protecting children from exploitation, even though the prohibition incidentally impinges on First Amendment freedoms." *Commonwealth* v. *Bean*, *supra* at 711-712. *United States* v. *Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006) ("There is no First Amendment right to persuade minors to engage in illegal sex acts"), and cases cited. See *Commonwealth* v. *Kenney*, 449 Mass. 840, 857 (2007) (upholding child pornography statute; Commonwealth must prove that no reasonable person would not have known that subject child was under age of eighteen).[13]

That being said, we recognize that several of the crimes set

---

[13]One might lure a child in violation of the child enticement statute without making any reference to sexual matters at all, such as by telling the child that he or she needs them to come to the individual's home or vehicle because the individual needs help with something, or because the individual has something to show (or give to) the child. See *Commonwealth* v. *Filopoulos, post* 234 (2008) (involving defendant who allegedly enticed child into his vehicle by falsely telling her that her father had sent him to give her a ride). If this were done over the Internet and the Internet communications themselves were not sufficient to demonstrate the statutorily required criminal intent, the Commonwealth, in order to obtain a conviction under the child enticement statute, would then obviously need to demonstrate the adult's criminal intent with

forth in the statutes enumerated in G. L. c. 265, § 26C (*b*), are so-called strict liability crimes. In a prosecution of one of those crimes, the Commonwealth is not required to prove the defendant's knowledge of the victim's age as an element of the crime. A defendant can be convicted of one of those crimes regardless of his lack of knowledge of the victim's age; consequently, as to those offenses, "mistake of age" is not a defense. See *Commonwealth* v. *Knap*, 412 Mass. 712, 714-715 (1992) (G. L. c. 265, § 13B); *Commonwealth* v. *Miller*, 385 Mass. 521, 523-524 (1982) (G. L. c. 265, § 23). Nor is it a defense for a defendant to claim that the victim consented, because a child under the statutory age is deemed incapable of consent. General Laws c. 265, § 13B (indecent assault and battery on a child under the age of fourteen) and § 23 (rape and abuse of a child, commonly referred to as statutory rape) are examples of strict liability statutes enumerated in the child enticement statute. By their very nature as strict liability statutes, they criminalize conduct that would not be criminal if it occurred between two consenting adults. Thus, on the surface, there appears to be an ambiguity in the child enticement statute: to obtain a conviction in circumstances where the intended offense is a strict liability crime, the Commonwealth is required to prove that the defendant acted with the intent to commit a crime that itself requires no criminal intent. The statute is, as described below, subject to at least two differing interpretations in this regard.

One way to resolve the ambiguity would be to interpret the statute in a manner that effectively does away with the intent requirement under subsection (*b*) where the Commonwealth is alleging that the defendant enticed a victim with the aim of taking action that, if it occurred, would constitute a strict liability crime. For example, under such an interpretation, a defendant could be convicted of child enticement if he enticed an individual to enter or remain in a vehicle, dwelling, building, or outdoor space with the intent to have consensual sexual intercourse with that person if, unbeknownst to the defendant, the person was under the age of sixteen. The Commonwealth could satisfy its burden of proof in this scenario without any showing whatsoever that the defen-

---

evidence beyond the mere words of the Internet messages.

dant knew or intended that his actions were being directed to a child under sixteen, i.e., without proof of a criminal mens rea. We reject this interpretation of the statute, for several reasons. First, it would essentially read the word "intent" out of the requirement of § 26C (*b*) that the enticement must be done by someone "with the intent that he or another person will violate" one of the enumerated statutes. We decline to adopt an interpretation that ignores words and phrases of the statute. "[E]very word in a statute should be given meaning," *Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc.*, 372 Mass. 353, 358 (1977), and no word is considered superfluous. See *Casa Loma, Inc.* v. *Alcoholic Beverages Control Comm'n*, 377 Mass. 231, 234 (1979), and cases cited. Equally if not more importantly, such an interpretation would be susceptible to a potential constitutional attack. Under such an interpretation, it could be argued, the statute would have an impermissibly broad sweep: an adult who employs the Internet to entice other adults to engage in consensual sexual relations could be found to have violated the child enticement statute if his or her sexual overtures were received by an underage individual, even if the sender never intended to have sexual relations with someone underage. This could occur, as one example, where the person with whom the adult was corresponding was in fact a child but had misrepresented his or her age and claimed to be older.

The correct way to interpret the statute, in our view, would be to give full meaning to the word "intent" in subsection (*b*), regardless which of the enumerated offenses the defendant is alleged to have intended to commit, and to require, in all cases, that the Commonwealth prove that the defendant *intended to commit a criminal offense*. In other words, under this interpretation, if a defendant is charged with child enticement and the Commonwealth seeks to prove that the intended offense was statutory rape, the Commonwealth will be required to prove that the defendant enticed a child (or someone whom the defendant believed to be a child) *with the intent to have sexual relations with a person under sixteen years of age* (likewise for the other strict liability statutes enumerated in the child enticement statute).[14]

---

[14]In *Commonwealth* v. *Filopoulos, supra*, released today, we address a situ-

This approach would not require that the Commonwealth prove that the defendant knew the exact age of the child. However, the defendant could not be found guilty unless the Commonwealth proves that his intention was to direct his sexual advances to an underage individual, i.e., an intent to do a criminal act. *Intending to have consensual sexual relations with another adult would not provide the requisite criminal intent*,[15] even if it turns out that the object of the defendant's advances was in fact a child.

Principles of statutory construction favor our interpretation. First, this interpretation avoids the potential constitutional overbreadth problem described above. Where the alleged intended offense is a strict liability crime, there would be no criminal liability under the child enticement statute for someone who enticed another, who was in fact underage, unless the person actually intended that the object of his advances be underage. The child enticement statute would punish only those persons who entice *with a criminal mens rea*, not those who entice with an intent to engage in consensual and constitutionally protected activity. It is, of course, "our duty to construe statutes so as to avoid such constitutional difficulties, if reasonable principles of interpretation permit it." *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 79 (1982). Doubts as to a statute's constitutionality "should be avoided if reasonable principles of interpretation permit doing so." *Staman* v. *Assessors of Chatham*, 351 Mass. 479, 487 (1966).

Second, construing the intent element of the child enticement statute in this fashion — requiring the Commonwealth affirmatively to prove a criminal intent even though the intended offense is itself a strict liability crime — gives the defendant the benefit of the ambiguity. "[I]t is well established that '[i]f the statutory language "[could] plausibly be found to be ambiguous," the rule of lenity requires the defendant be given 'the benefit of the ambiguity.' " *Commonwealth* v. *Constantino*, 443 Mass. 521, 525 (2005), quoting *Commonwealth* v. *Carrion*, 431

---

ation where one of the strict liability statutes the Commonwealth contends the defendant intended to violate, G. L. c. 265, § 13B, requires that the victim be under the age of fourteen.

[15]Nothing prohibits someone who disseminates to a general audience a solicitation for a consensual sexual relationship from indicating, in an exercise of caution, that the solicitation is meant only for adults.

Mass. 44, 45-46 (2000). The rule of lenity thus supports the interpretation we have chosen. Additionally, G. L. c. 265, § 26C, was enacted as part of comprehensive legislation to protect children from predators. See St. 2002, c. 385 ("An Act further protecting children"). If the language of a statute is "faulty or lacks precision," the court must "give the statute a reasonable construction." *Commonwealth* v. *Pagan,* 445 Mass. 315, 319 (2005), quoting *Capone* v. *Zoning Bd. of Appeals of Fitchburg,* 389 Mass. 617, 622 (1983). See *Commonwealth* v. *Williams,* 427 Mass. 59, 62 (1998), quoting *Commonwealth* v. *A Juvenile,* 16 Mass. App. Ct. 251, 254 (1983) ("If the language of the statute is ' "fairly susceptible [of] a construction that would lead to a logical and sensible result" . . . we will construe [it] so "as to make [it an] . . . effectual piece of legislation . . ." ' "). See also *American Family Life Assur. Co.* v. *Commissioner of Ins.,* 388 Mass. 468, 474, cert. denied, 464 U.S. 850 (1983) (indicating that title of act may aid in construction of ambiguous language).

We thus conclude that our interpretation of the statute satisfies a number of objectives: it is consistent with the statute's plain language, gives force to the Legislature's intent to protect children, appropriately gives the defendant the benefit of the ambiguity, and accomplishes all of this in a manner that avoids a potential constitutional problem. Any remaining overbreadth will be de minimis in a constitutional sense and can be resolved on a case-by-case basis. *Commonwealth* v. *Kenney,* 449 Mass. 840, 857-858 (2007), citing *New York* v. *Ferber,* 458 U.S. 747, 773-774 (1982).

The defendant also argues that the statute is unconstitutional because it impermissibly shifts the burden of proof to him to demonstrate that he did not subjectively believe that "Sara" was a child and that he was forced to testify to discuss his beliefs. This argument has no merit. Although a defendant may testify or offer evidence to negate the Commonwealth's evidence of a defendant's criminal intent, the burden of proving the defendant's criminal intent, as set forth in this opinion, always remains on the Commonwealth. See *Commonwealth* v. *Bean,* 435 Mass. 708, 711-712 (2002). Cf. *Commonwealth* v. *Kenney, supra* at 857, citing *Commonwealth* v. *Lopez,* 433 Mass. 722, 725 & n.3 (2001).

The defendant also argues that the statute violates his con-
stitutionally protected right to free association. Soliciting crim-
inal sexual activity over the Internet does not implicate freedom
of association. There is no right to free speech or free associa-
tion implicated when someone entices another with the intent to
commit a criminal act on them. "The freedom of association
encompasses 'the right "to enter into and maintain certain
intimate human relationships," and a right "to associate for the
purpose of engaging in those activities *protected by the First
Amendment [such as freedom of] speech . . .*" ' " (emphasis
added). *American Lithuanian Naturalization Club, Athol, Mass.,
Inc.* v. *Board of Health of Athol*, 446 Mass. 310, 324 (2006),
quoting *Concord Rod & Gun Club, Inc.* v. *Massachusetts
Comm'n Against Discrimination*, 402 Mass. 716, 721 (1988)
(concluding that smoking ban in private club would not interfere
with members' ability to maintain protected relationships with
each other). The statute here prohibits individuals from employ-
ing the Internet or other means for the sexual exploitation of
children. It does not prevent the formation of legitimate,
constitutionally protected associations or prohibit legitimate,
constitutionally protected speech.[16]

c. *Sufficiency of the evidence.* The defendant argues that there
was insufficient evidence to convict him of violating the child
enticement statute. We disagree. He expressly enticed "Sara"
within the meaning of the statute by inviting her to come to his
residence. The explicit statements he made to Sara about the sex-
ual acts he wanted to perform on her — including penetrating
her vagina digitally and orally — were sufficient to evidence an
intent to commit statutory rape. See *Commonwealth* v. *Gallant*,
373 Mass. 577, 583-584 (1977) (digital and oral penetration
designated as statutory rape pursuant to G. L. c. 265, § 23).
Moreover, despite the defendant's testimony offering an explana-

---

[16]We express no opinion whether an Internet relationship can constitute an
intimate relationship for purposes of the freedom of association. See *Directors
of Rotary Int'l* v. *Rotary Club of Duarte*, 481 U.S. 537, 545 (1987), quoting
*Roberts* v. *United States Jaycees*, 468 U.S. 609, 619-620 (1984) ("the First
Amendment protects those relationships, including family relationships, that
presuppose 'deep attachments and commitments to the necessarily few other
individuals with whom one shares not only a special community of thoughts,
experiences, and beliefs but also distinctly personal aspects of one's life' ").

tion of his intent and motivations to the contrary, the judge, as the finder of fact, was warranted in finding from the content of the defendant's conversations with Sara, including his comments and questions about her pubic hair and menstruation, that the defendant believed that she was in fact an underage child. Indeed, recognizing the criminal nature of the planned conduct, the defendant repeatedly told Sara that they had to be careful. He also worried whether she was a police officer, and said that their meeting would have to be done secretly, and that he would sneak her into his house.[17]

d. *Admissibility of statements.* The defendant argues that certain statements he made to police should have been suppressed because the warrant application and affidavit did not establish probable cause; officers executing the warrant failed to show him a copy of the warrant; and his waiver of his Miranda rights was not voluntary because he was handcuffed and did not feel free to leave. There is no merit to the defendant's arguments.

The first motion judge[18] held that the defendant's own statements in his instant messages to Sara (as well as to the woman from Haverhill and her fictitious persona) "were such as 'to warrant a man of reasonable caution in the belief that an offense ha[d] been . . . committed.' *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982), quoting *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949); specifically, the offenses of child enticement; [as well as] rape and abuse . . . indecent assault and battery . . . and unnatural and lascivious acts on a child." Admission of a crime is sufficient to support a finding of prob-

[17]For example, the defendant wrote to Sara, "[B]ut just have to be careful for your age[]"; "we can't tell anyone"; "we have to be so careful"; and "you may be a cop." The defendant further related to the woman from Haverhill that he wished having sex with children was legal and advised her that one had to be careful recruiting children from Lynn, because "some could be decoy cops."

[18]The defendant filed two motions to suppress. The first, essentially concerning the issue of probable cause to support the search warrant, was decided without an evidentiary hearing. The second motion raised the validity of the police handcuffing the defendant when they went to his home to execute a warrant; the validity of the defendant's waiver of his Miranda rights; and a failure to leave a copy of the search warrant at the defendant's home. A second judge held an evidentiary hearing on the second motion. We shall refer to the judges who issued decisions on these motions, respectively, as the first motion judge and the second motion judge.

able cause. *Commonwealth* v. *Parapar*, 404 Mass. 319, 322 (1989), quoting *United States* v. *Harris*, 403 U.S. 573, 585 (1971). Moreover, because the defendant's instant message communications took place both during normal working hours and at times "when it was reasonable to assume that the defendant was not at work," the first motion judge found that there was probable cause to search the defendant's home for computers and storage media. There was no error.

There is no merit to the defendant's claim that he never saw a copy of the search warrant that the officers executed on June 5, 2003. The issue was one of credibility of the conflicting testimony of the police officers on the one hand and the defendant, his father, and his brother on the other hand. There was ample evidence in the record to support the second judge's factual finding that the defendant was presented with a copy of the search warrant when officers arrived to search his home, and that a copy of the warrant was left in his kitchen. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990) (stating well-settled principle that motion judge determines weight and credibility of testimony). The finding was not clearly erroneous.

The second judge also found that the defendant received Miranda warnings three times while the police were searching his house. The defendant argues that his waiver was involuntary because he was handcuffed and did not feel free to leave the presence of the officers. There was no error. The judge was warranted in finding that the handcuffing was proper and temporary, and that the waiver was knowing, intelligent, and voluntary. See generally *Commonwealth* v. *Hilton*, 443 Mass. 597, 608-609 (2005), *S.C.*, 450 Mass. 173 (2007) (stating well-settled principle that Miranda requirements are not triggered unless interrogation is "custodial," which means that reasonable individual in defendant's position would have believed he was not free to leave).

e. *Entrapment.* We need not belabor the defendant's argument that the judge erred in denying his motion for a judgment of acquittal on the ground that the police entrapped him. His claim is premised on the fact that the police officers, posing as Sara, initiated the conversations with him. Where entrapment or inducement is raised as a defense, the Commonwealth bears the burden of proving predisposition. *Commonwealth* v. *Koulouris*, 406

Mass. 281, 284-285 (1989). "Predisposition may be shown by, among other things . . . competent proof of the reputation of the defendant for the commission of similar crimes." *Commonwealth* v. *Miller*, 361 Mass. 644, 652 (1972). Here, the Commonwealth easily met its burden. The defendant's Internet exchanges with the woman who brought him to the attention of police, in which the defendant admitted to molesting children and invited the woman to share in his sexual exploits with children, was enough to show that the defendant had a predilection for the crime. *Id.* at 651 (no entrapment where defendant ready and willing to commit the crime).

*Conclusion.* For the reasons set forth above, the defendant's conviction is affirmed.

*So ordered.*