SUPREME JUDICIAL COURT 
 
 JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 528042 vs. SEX OFFENDER REGISTRY BOARD

 
 Docket:
 SJC-13725
 
 
 Dates:
 April 7, 2025 - August 14, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Bristol
 

 
 Keywords:
 Sex Offender. Sex Offender Registration and Community Notification Act. Evidence, Sex offender. Practice, Civil, Sex offender, Standard of proof, Judgment on the pleadings. Administrative Law, Substantial evidence, Standard of proof, Agency's interpretation of regulation, Decision. Words, "Victim," "Child," "Disseminate."
 
 

       Civil action commenced in the Superior Court
Department on August 26, 2022.
      The case was heard by Elaine M. Buckley,
J., on a motion for judgment on the pleadings.
      The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.
      Kate Frame for the plaintiff.
      David L. Chenail for the defendant.
      Rebecca Rose, for Committee for Public
Counsel Services, amicus curiae, submitted a brief.
      GAZIANO, J.  The plaintiff, John Doe, Sex Offender
Registry Board No. 528042 (Doe), drove to Rhode Island to rape two fifteen year
old girls in exchange for the payment of money. 
Unbeknownst to him, the "girls" were an undercover police
officer.  Doe was convicted of indecent
solicitation of a child in a Rhode Island court and subsequently classified as
a level two sex offender by the Massachusetts Sex Offender Registry Board
(SORB).  After a de novo hearing, a SORB
hearing examiner ordered Doe to register as a level two offender.  On appeal, Doe challenges that
classification, maintaining that the hearing examiner erred in applying factor
3 (adult offender with child victim), factor 7 (stranger victim), factor 9
(substance abuse), factor 10 (contact with criminal justice system), factor 15
(hostility towards women), and factor 22 (number of victims).
      For the reasons herein given, we conclude
that the hearing examiner did not abuse his discretion in his substantive
application of or assignment of weight to these factors.  However, because the hearing examiner's
written decision failed to answer -- indeed, expressly equivocated on -- the
crucial question whether Doe's information should be disseminated, the hearing
examiner's written decision failed to issue an unambiguous conclusion with
respect to Doe's level of classification. 
We remand so that the hearing examiner may issue a conclusion on both
issues.
      1. 
Background.  a.  Facts. 
We summarize the facts found by the hearing examiner after the
evidentiary hearing, supplemented by additional undisputed facts from the
record.
      On January 24, 2020, a Rhode Island
detective working undercover posted an advertisement on a website presenting
himself as two twenty year old females offering "a safe/discrete memorable
time" in Providence, Rhode Island. 
At approximately 11:30 P.M. that same day, Doe sent a text message to
the undercover detective, asking about "the rates."  Posing as the two females, the undercover
detective told Doe that they were actually fifteen years old and sent him
age-regressed images of female Rhode Island State police troopers by way of
confirmation.  Doe replied that he wanted
"fs," which the detective understood, based on prior prostitution
investigations and related experience, to refer to "full service" --
i.e., sexual intercourse.   During the
exchange, Doe expressed concern about the possibility that he was speaking to
"cops" and that the girls were "young."  In response, the detective assured Doe
multiple times that Doe was in fact speaking to two fifteen year old girls who
had "previously offered sexual services in exchange for money."  Eventually, the detective sent Doe the
address and room number of a hotel in Providence.  Doe responded, "I'll be there."
      Following the exchange, Doe drove from
Massachusetts to the Providence hotel. 
At approximately 12:50 A.M. on January 25, 2020, Doe arrived at the
hotel parking lot.  After receiving a few
more text messages from the "girls" in which they assured him that
they were not undercover cops, Doe entered the designated meeting spot in the
hotel and was immediately taken into custody by Rhode Island State police at
approximately 1:15 A.M.  The police found
a plastic bag containing a "white rock like" substance on Doe, which
subsequently tested positive for the presumptive presence of cocaine.
      Doe was arraigned in the Rhode Island Superior
Court and charged with one count of indecent solicitation of a child pursuant
to R.I. Gen. Laws § 11-37-8.8 -- a "like offense"[1] to enticing
a child under the age of sixteen pursuant to G. L. c. 265, § 26C
-- and one count of possession of a controlled substance.  In August 2021, Doe entered a plea of nolo
contendere on the indecent solicitation charge, for which he received a
three-year suspended sentence with three years of probation.  The controlled substance charge was dismissed
in exchange for Doe's plea.
      Prior to these events, Doe had a history
of involvement with the criminal justice system in the Commonwealth.  Of particular relevance, Doe was charged a
total of four times between 1996 and 1997 for violating an abuse prevention
order.  Among the four charges, Doe was
found guilty of one such violation in 1997, for which he received a suspended
sentence.  During this same time period,
in 1996 and 1998, two different women took out abuse prevention orders against
Doe.  And in 2007, Doe received a
continuance without a finding on a charge of possession of a class B substance,
which was subsequently dismissed.[2] 
      b. 
Procedural history.  In November
2021, SORB issued a preliminary determination classifying Doe as a level two
sex offender.  Doe requested a hearing to
challenge SORB's classification.  In July
2022, the hearing examiner found, by clear and convincing evidence, that Doe
posed a moderate risk to reoffend and a moderate danger to the public.  The hearing examiner accordingly ordered Doe
to register as a level two sex offender.
      In his decision, the hearing examiner
applied the following factors listed in 803 Code Mass. Regs. § 1.33 (2016)[3]
as high-risk or risk-elevating:  factor 3
(adult offender with child victim), factor 7 (stranger victim), factor 15
(hostility towards women), and factor 22 (number of victims).  The hearing examiner also applied factor 9
(substance abuse) and factor 10 (contact with criminal justice system) with
minimal weight.  Conversely, the hearing
examiner applied the following risk-mitigating factors:  factor 28 (supervision by probation), factor
30 (advanced age), and factor 32 (sex offender treatment).[4]
      Doe appealed from the hearing examiner's
decision to the Superior Court and moved for judgment on the pleadings, arguing
that the decision was arbitrary and capricious and not based on substantial
evidence.  In October 2023, the motion
was denied, and the hearing examiner's decision was affirmed.  Doe further appealed, and we transferred the
case to this court on our own motion.
      2. 
Discussion.  We begin by briefly
reviewing the structure of the Commonwealth's statutory and regulatory scheme
for classifying sex offenders.  Persons
convicted of sex offenses, as defined by G. L. c. 6, § 178C, are
required to register upon release from custody or notification of an obligation
to register.  See Noe, Sex Offender
Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 196 (2018),
citing G. L. c. 6, § 178E (a), (c).
      Sex offenders with a duty to register are
assigned to one of three levels of classification.  Doe, Sex Offender Registry Bd. No. 339940 v.
Sex Offender Registry Bd., 488 Mass. 15, 18 (2021), citing G. L.
c. 6, § 178K (2).  If the
sex offender's "risk of reoffense is low and the degree of dangerousness
posed to the public is not such that a public safety interest is served by
public availability [of registration information]," SORB assigns a level
one designation to that offender.  G. L.
c. 6, § 178K (2) (a). 
If the sex offender's risk of reoffense is "moderate" and the
degree of dangerousness is "such that a public safety interest is served
by public availability of registration information," SORB assigns a level
two designation.  G. L. c. 6,
§ 178K (2) (b).  A level
two offender's registration information is transmitted to police departments
where that offender lives and can be accessed online by members of the
public.  Id.  Finally, if the sex offender's risk of
reoffense is "high" and the degree of dangerousness is such that a
public safety interest is served by "active dissemination" of
registration information, SORB assigns a level three designation.  G. L. c. 6,
§ 178K (2) (c).
      In determining what classification level
to assign a given sex offender, SORB is guided by a set of duly promulgated
regulations that enumerate thirty-eight risk-aggravating and risk-mitigating
factors.  See 803 Code Mass. Regs.
§ 1.33.  Because of the potentially
serious consequences attendant to any risk classification, SORB's
classification decisions must be proved by "clear and convincing
evidence" -- that is, evidence "sufficient to convey a high degree of
probability that the contested proposition is true" (quotation and
citation omitted).  Doe, Sex Offender
Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 309, 314
(2015).
      Sex offenders are entitled to judicial
review of SORB's final classification decision. 
See G. L. c. 6, § 178M; G. L. c. 30A,
§ 14.  On review, the court shall
affirm SORB's classification decision unless it concludes that the decision
"is in excess of the board's statutory authority or jurisdiction, is based
on an error of law, is not supported by substantial evidence, or is
. . . arbitrary and capricious [or an] abuse of discretion."  Doe, Sex Offender Registry Bd. No. 3177 v.
Sex Offender Registry Bd., 486 Mass. 749, 754 (2021).  See G. L. c 30A,
§ 14 (7).  Substantial evidence
is "such evidence as a reasonable mind might accept as adequate to support
a conclusion."  G. L.
c. 30A, § 1 (6).
      "In reviewing SORB's decisions, we
give due weight to the experience, technical competence, and specialized
knowledge of the agency" (quotation and citation omitted).  Doe, Sex Offender Registry Bd. No. 205614 v.
Sex Offender Registry Bd., 466 Mass. 594, 602 (2013) (Doe No. 205614).  To that end, "[a] hearing examiner has
discretion . . . to consider which . . . factors are
applicable and how much weight to ascribe to each factor."  Doe, Sex Offender Registry Bd. No. 68549 v.
Sex Offender Registry Bd., 470 Mass. 102, 109–110 (2014).  "An abuse of discretion occurs where the
hearing examiner makes 'a clear error of judgment in weighing the factors
relevant to the decision . . . such that the decision falls outside
the range of reasonable alternatives.'" 
Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd.,
99 Mass. App. Ct. 292, 299 (2021), quoting L.L. v. Commonwealth, 470 Mass. 169,
185 n.27 (2014).
      Turning to the case at bar, Doe challenges
the hearing examiner's determination with respect to three sets of risk factors
identified in 803 Code Mass. Regs. § 1.33. 
Specifically, Doe argues that the hearing examiner's application of and
assignment of weight to factor 3 (adult offender with child victim), factor 7
(stranger victim), and factor 22 (number of victims) was an abuse of discretion
because no "child[ren]" or "victims" were in fact targeted
by Doe.  In addition, Doe challenges the
hearing examiner's application of and assignment of weight to factor 10
(contact with criminal justice system) and factor 15 (hostility towards women)
as an abuse of discretion on the grounds that the relevant arrests, charges,
and convictions were decades old and did not involve sex crimes.  Finally, Doe challenges the hearing
examiner's application of, and assignment of weight to, factor 9 (substance
abuse) as an abuse of discretion on the ground that there is no history of
substance abuse by Doe.  In light of
these points, Doe asserts that the hearing examiner's over-all assessment of
the factors was unsupported by substantial evidence.  We address each challenge in turn.
      a. 
Factors 3, 7, and 22.  Doe's
argument with respect to these factors can be stated simply.  First, by its terms, factor 3 deems an "[a]dult
[o]ffender with a [c]hild [v]ictim" a "high-risk" factor,
explaining that "[a]dult offenders who target children pose a heightened
risk to public safety because children normally lack the physical and mental
strength to resist an offender . . . [and] can be lured into
dangerous situations more easily than most adults."  803 Code Mass. Regs. § 1.33(3)(a).  Here, however, no children were involved; as
Doe states, the "fifteen year old girls" "[did] not exist,
except as a concept by the Rhode Island State [p]olice."  Hence, he argues, Doe cannot be said to have
"targeted" any children.  Next,
factor 7 defines a "[s]tranger [v]ictim" as "[a]ny person who
has known the offender for less than [twenty-four] hours prior to the offense,"
which in the case of a child victim means that "the offender would have to
transmit sexually explicit materials or make sexually explicit comments within
[twenty-four] hours of first electronic contact."  803 Code Mass. Regs. § 1.33(7)(a)(3).  Here, Doe argues, the fact that Doe was
corresponding with an undercover police officer implies that there was no
stranger "child victim" receiving sexual comments or materials.  Finally, factor 22 assigns heightened risk to
"[o]ffenders who have committed acts of sexual misconduct against two or
more victims."  803 Code Mass. Regs.
§ 1.33(22).  Because here there were
no actual child victims of Doe's crime of indecent solicitation of a child, Doe
maintains that there were not "two or more victims" such that factor
22 has no application.
      Doe's arguments turn on the meaning of
"victim" and "child" in 803 Code Mass. Regs.
§ 1.33(3), (7), and (22).  When
reviewing SORB's interpretation of its own regulations, we accord
"considerable deference" to that interpretation "unless [it is]
arbitrary, unreasonable, or inconsistent with the plain terms of the
regulations themselves" (citation omitted).  Doe No. 205614, 466 Mass. at 602.  Beginning with the "plain terms of the
regulations themselves" (citation omitted), id., the regulations do not
explicitly define the terms "victim" and "child."  In particular, 803 Code Mass. Regs.
§ 1.33 does not explicitly state whether "victim" or
"child" may encompass undercover police agents who represent
themselves as minors.  Nor are there any
published decisions addressing that specific question of regulatory
interpretation.  Nevertheless, when read
in context, the plain meanings of "victim" and "child"
indicate that these terms apply to the characteristics of the offender's
intended victims, at least when the actual "victims" were undercover
police agents.
      First, "we do not read the words of
the regulation in isolation," as they "gain[] meaning from other[]
[words] with which [they are] associated" (citation omitted).  Freiner v. Secretary of the Executive Office
of Health & Human Servs., 494 Mass. 198, 212 (2024).  Here, we observe that 803 Code Mass. Regs.
§ 1.33(3) refers to "[a]dult offenders who target children"
(emphasis added).  To "target"
is to "set as a goal." 
Merriam-Webster Online Dictionary,
https://www.merriam-webster.com/dictionary/target
[https://perma.cc/LUN8-P7AY].  Under that
definition, if an individual "set[s] as a goal" a sexual encounter
with persons whom he believes to be children, he thereby "targets"
children for a sexual encounter.  Here,
it is true that the defendant did not initially pursue the objective of having
a sexual encounter with two children. 
But nor did he desist when his targets told him they were underage.  And by the time Doe got into his car to drive
to Providence, he had "set as a goal" a sexual encounter with two
children.  In short, "the plain
terms of the regulations themselves" (citation omitted), Doe No. 205614,
466 Mass. at 602, imply that Doe is an "[a]dult offender[] who target[ed]
children," 803 Code Mass. Regs. § 1.33(3).
      Second, we interpret regulatory language
"in connection with . . . the main object to be accomplished [by
the regulation], to the end that the purpose of its framers may be
effectuated" (citation omitted).  Limoliner,
Inc. v. Dattco, Inc., 475 Mass. 420, 423 (2016).  The overarching objective of using the
enumerated factors is "to determine each sex offender's level of risk of
reoffense and degree of dangerousness posed to the public in reaching a final
classification decision."  803 Code
Mass. Regs. § 1.33.  As our sister
court in Vermont has stated, "[t]he fact that the purported victim turned
out to be an undercover officer does not change defendant's intent or conduct,
nor the risk to the community arising from his sex offense."  State v. Charette, 2018 VT 48, ¶ 13.  See Commonwealth v. Disler, 451 Mass. 216,
223 (2008) (where undercover officer pretended to be girl named
"Sara," "it is of no consequence that Sara was not a real
person, because factual impossibility is not a defense to a crime [of child
enticement]" [quotation and citation omitted]); People v. DeDona, 102
A.D.3d 58, 65 (N.Y. 2012) (fact that "girl" was actually undercover
police officer "does not lessen [the offender's] risk of reoffense, or
make him any less of a risk to the community than he would be if he had
succeeded in making contact with an actual child").
      In light of these textual and purposive
considerations, SORB's construction of the terms "victim" and
"child" in 803 Code Mass. Regs. § 1.33(3), (7), and (22) cannot
be said to be "arbitrary, unreasonable, or inconsistent with the plain
terms of the regulations themselves" (citation omitted).  Doe No. 205614, 466 Mass. at 602.  So construed, these terms encompass
characteristics of an offender's intended victims, at least when the actual
"victims" were undercover police agents.  Under that interpretation, the hearing
examiner's application and weighing of factors 3, 7, and 22 with respect to Doe
was not an abuse of discretion.
      With respect to factor 3, Doe responded
to an online advertisement for sexual services, which initially described the
providers as adults.  Again, when Doe was
told that the involved parties were fifteen years old, he did not desist; on
the contrary, he persisted.  While
expressing intermittent hesitation and nervousness about the possibility of
being caught, Doe nevertheless confirmed the rates for "full
service," arranged to meet at a hotel in Providence, drove to the hotel,
and approached the designated meeting spot. 
In short, apart from the very beginning of his interaction with the
"girls" before they revealed their "age," Doe consistently
acted on the intention of raping minors in exchange for the payment of
money.  This is sufficient for us to conclude
that the hearing examiner was within his discretion in applying factor 3.
      The same rationale supports the hearing
examiner's application of factors 7 and 22. 
Factor 7 applies to offenders who victimize strangers; where the victim
is a child, this means that the offender "ma[d]e sexually explicit comments
[to the child] within [twenty-four] hours of first electronic
contact."  803 Code Mass. Regs.
§ 1.33(7)(a)(3)(a), (c).  Here, all
of Doe's electronic communications with the undercover officer took place
within a twenty-four hour period.  During
this time, in addition to requesting "fs" and inquiring about
"rates," Doe wrote, "The only thing is that your young thats
stopping me but I want fs."  Given
these facts, the hearing examiner was within his discretion in applying factor
7.  Finally, factor 22 applies to
offenders who victimize "two or more victims."  803 Code Mass. Regs. § 1.33(22).  There is no dispute that at every stage of
the interaction, Doe believed that he was making plans to meet with two
persons.  This suffices to warrant
application of factor 22.
      b. 
Factors 10 and 15.  Factor 10,
which concerns an offender's criminal history, provides that
"[l]awlessness and antisocial behavior correlate with risk of reoffense
and degree of dangerousness."  803
Code Mass. Regs. § 1.33(10)(a).  An
analysis of this factor entails consideration of "the number and type of
[an offender's] criminal charges, dispositions on the charges, dates of the
criminal conduct, and number of abuse prevention or harassment prevention
orders."  Id.  Doe maintains that the hearing examiner erred
in assigning even "minimal" weight to this factor on the grounds that
Doe's prior criminal history presented at the hearing was "decades old and
contained no incidents of sexual crimes." 
Factor 15 provides that "[h]ostile attitudes and behavior towards
women are predictive of sexual reoffense and increased
dangerousness."  803 Code Mass.
Regs. § 1.33(15)(a).  Doe maintains
that the hearing examiner erred in assigning weight to this factor on similar
grounds, emphasizing that the only relevant offenses were over twenty years
old.
      As discussed supra, Doe has a long history
of involvement with the criminal justice system.  In addition to vandalism and shoplifting
charges in 1993 and 1994 when Doe was a minor, Doe was charged with the
following:  violations of the Abuse
Prevention Act, G. L. c. 209A, in 1996 and 1997; disturbing the peace
in 1997; operating to endanger in 1999; motor vehicle offenses in 2000, 2004,
and 2009; and conspiracy to violate the Controlled Substances Act, G. L.
c. 94C, possession of a class B controlled substance (cocaine), and
possession with intent to distribute a class B controlled substance (cocaine)
in 2007.  These charges were disposed of
via dismissal, continuance without a finding, committed sentence, and suspended
sentence.  In addition, two different
women took out abuse prevention orders against Doe, in 1996 and 1998.
      We first consider factor 10.  As a threshold matter, "factor 10 is not
limited to . . . a particular time frame . . . [and] does
not confine the examiner to consider only convictions."  Doe, Sex offender Registry Bd. No. 390261 v.
Sex Offender Registry Bd., 98 Mass. App. Ct. 219, 226 (2020).  Rather, factor 10 directs the hearing
examiner to broadly "consider evidence of a persistent disregard for
rules, laws, and the violation of the rights of others."  803 Code Mass. Regs. § 1.33(10)(a).  Again, we are mindful that "[a] hearing
examiner has discretion . . . to consider which statutory and
regulatory factors are applicable and how much weight to ascribe to each
factor."  Doe, Sex Offender Registry
Bd. No. 68549, 470 Mass. at 109–110. 
Given that grant of discretion, the broad directive to consider evidence
of antisocial behavior without explicit limit as to time or guilty disposition,
and Doe's own lengthy history of involvement with the criminal justice system,
we conclude that the hearing examiner's assignment of "minimal
weight" to factor 10 was not an abuse of discretion.
      With respect to factor 15, the plain text
of the regulation forecloses Doe's argument. 
By its terms, "[f]actor 15 is applied when an offender
. . . has multiple abuse prevention orders or harassment prevention
orders taken out by different women at different times."  803 Code Mass. Regs. § 1.33(15)(a).  As noted supra, two different women took out
abuse prevention orders against Doe in two different years.  This is sufficient to conclude that the
hearing examiner's application of factor 15 was not an abuse of discretion.
      c. 
Factor 9.  Finally, Doe challenges
the application of factor 9. 
"Factor 9 applies when the sex offender has a history of substance
abuse, demonstrates active substance abuse, or when the offender's substance
use was a contributing factor in the sexual misconduct."  803 Code Mass. Regs. § 1.33(9)(a).  Doe maintains that his demonstrated history
does not establish that any of these characterizations applies.
      We conclude that it was within the hearing
examiner's discretion to apply factor 9. 
On the one hand, Doe's criminal record indicates only two instances of
drug use or possession:  one in 2007 and
the other in 2020, stemming from the conduct underlying this case.  Apart from these episodes, there is no further
evidence of Doe's current or past possession or use of drugs.  For that reason, applying significant weight
to factor 9 would likely be unwarranted. 
However, the hearing examiner applied only "minimal weight" to
factor 9.  Even if the 2007 charges were
ignored on the ground that they establish only possession, not substance abuse,
the fact that the defendant brought cocaine to an anticipated sexual encounter
with two minor children provides support for the conclusion that, at least to
some extent, Doe's "substance use was a contributing factor in the sexual
misconduct."  803 Code Mass. Regs.
§ 1.33(9)(a).  Accordingly, we find
no abuse of discretion in the hearing examiner's application of "minimal
weight" to factor 9.
      d. 
The combined assessment. 
Determining which risk factors are applicable to the offender and applying
due weight to those factors is necessary but not sufficient to discharge the
hearing examiner's statutory and regulatory obligations.  Once the applicable factors have been duly
weighed, the hearing examiner must synthesize those factors into written conclusions
concerning the sex offender's risk of reoffense and level of dangerousness, as
well as the efficacy of disseminating the offender's registry information over
the Internet.  See 803 Code Mass. Regs.
§ 1.20(1) (2016).  These conclusions
serve as the basis for the hearing examiner's final registration determination
and the offender's classification level. 
Id.
      Here, after weighing the relevant factors,
the hearing examiner concluded, by clear and convincing evidence, that Doe's
risk of reoffense and his level of dangerousness were both
"moderate."  However, the
hearing examiner's conclusion with respect to the need for disseminating Doe's
information is ambiguous.  Specifically,
while the hearing examiner initially indicated in his decision that "a
public safety interest is served by public access to [Doe's] sex offender
registry information and Internet dissemination," he later appears to have
reversed course:  "I find that it is
too soon to tell if [Doe's] risk of reoffense and dangerousness are lowered to
a degree where his information does not need to be disseminated."  Because the need for dissemination bears
directly on an offender's classification level, the hearing examiner failed to
issue an unambiguous conclusion with respect to Doe's classification level. 
      As a threshold matter, we note that the
hearing examiner's references to "disseminated" and
"dissemination" are not entirely clear.  To be sure, "active dissemination"
of registry information is only called for with respect to level three
offenders.  See G. L. c. 6,
§ 178K (2) (c); 803 Code Mass. Regs. § 1.03 (2016).  See also Doe, Sex Offender Registry Bd. No.
6729 v. Sex Offender Registry Bd., 490 Mass. 759, 768 (2022) (in assigning
level three classification, hearing examiner must make three explicit findings
-- "a high risk of reoffense, a high degree of dangerousness, and a public
safety interest is served by active dissemination of the offender's registry
information").  At the same time,
there are several places in 803 Code Mass. Regs. §§ 1.00 where
"disseminate" and its grammatical variants appear to be used in a
broader sense more akin to its plain meaning: 
that is, to "disperse throughout" or distribute.  Merriam-Webster Online Dictionary,
https://www
.merriam-webster.com/dictionary/disseminate
[https://perma.cc
/GPU4-536M].  For example, in the context of registry
information "disseminated to law enforcement," a SORB regulation
specifies that it must "transmit" such information to certain police
departments.  803 Code Mass. Regs.
§ 1.05(9)(c) (2016).  Similarly,
concerning the "[d]issemination of [i]nformation to [v]ictims,"
another regulation provides that SORB "may inform that victim of the sex
offender's final registration and classification determination" (emphasis
added).  803 Code Mass. Regs.
§ 1.26(4) (2016).
      Given the hearing examiner's explicit
conclusion that Doe is a level two offender –- and the absence of either any
suggestion that Doe might be a level three offender or any reference to
"active" dissemination -- we must assume that the examiner was using
the term "dissemination" in the broader sense.  In that broader sense, a sex offender's
registration information is "disseminated" if it is made publicly
available on the sex offender Internet database, which allows the public to
search for finally classified level two sex offenders as of July 12, 2013,
using certain search parameters.  803
Code Mass. Regs. § 1.03.  See G. L.
c. 6, § 178D (requiring SORB to make certain registry information
"available for inspection by the general public in the form of a
comprehensive database").
      Even given that clarifying interpretation,
however, the fact remains that the hearing examiner's decision equivocated in
three substantive respects.  First, it
made two assertions that are facially at odds with each other.  If it is "too soon to tell" whether
Doe's "information does not need to be disseminated," then we cannot
be confident that the hearing examiner found by clear and convincing evidence
that "a public safety interest is served by . . . Internet
dissemination."  Second, the hearing
examiner's statement that it is "too soon to tell if . . .
[Doe's] information does not need to be disseminated" is itself inherently
equivocal.  Simply put, it is impossible
to discern an unambiguous conclusion from the hearing examiner's decision as to
whether Doe's information should or should not be "disseminated," and
more broadly what degree of public access to that information is called for.  Third, this ambiguity casts doubt on the certitude
of the level two designation itself.
      The upshot is that by equivocating on the
question of dissemination, the hearing examiner's decision ultimately
equivocated with respect to Doe's "final registration determination and
classification level."  803 Code
Mass. Regs. § 1.20(1)(f).  In
particular, it was error for the hearing examiner to defer making a decision on
the propriety of dissemination until "time . . .
tell[s]."  Time should already have
told.
      3. 
Conclusion.  With respect to the substance
of the hearing examiner's determinations on the applicable risk factors, we
affirm.  However, the hearing examiner's
decision equivocated with respect to the question whether Doe's information
should or should not be disseminated.  In
consequence, the hearing examiner's decision equivocated on the ultimate
question of Doe's classification level. 
Therefore, the Superior Court judgment is vacated, and a new judgment
shall enter remanding the matter to SORB so that the hearing examiner may issue
a written conclusion with respect to both questions.
So ordered.

footnotes

[1]
"Generally, any person who has been convicted of a sex offense in another
State that is a 'like offense' to a sex offense that requires registration
under Massachusetts law must register with SORB if the individual moves to [or
resides in] the Commonwealth." 
Edwards v. Commonwealth, 488 Mass. 555, 557 (2021).  See G. L. c. 6, § 178C.

[2] Charges
brought at the same time for possession of a class B substance with intent to
distribute and conspiracy to violate the Controlled Substances Act were
dismissed.

[3] Title 803
Code Mass. Regs. §§ 1.00 was recently amended, effective April 25,
2025.  We refer to the version of the
regulations in effect at the time of the hearing examiner's decision.

[4] In his
decision, the hearing examiner specified the weight he applied to certain
factors as follows:  factor 7 was given
"increased" weight; factors 9, 10, and 30 were given
"minimal" weight; and factor 28 was given "full" weight.