Commonwealth vs. Daniel Harris.

No. 07-P-981.

Bristol. March 14, 2008. - April 17, 2009.

Present: McHugh, Brown, & Katzmann, JJ.

*Practice, Criminal,* Instructions to jury. *Joint Enterprise. Rape. Minor.*

A trial court judge did not err in denying a criminal defendant's motions for a new trial and to revise and revoke his sentence, brought on the ground that evidence was insufficient to prove that the defendant, who had been convicted of statutory rape and conspiracy to commit the same offense, both on a theory of joint venture, knew the victim's age, where the evidence, whether viewed in the light most favorable to the Commonwealth (i.e., under a "presence" theory of joint venture) or in the light most favorable to the defendant (i.e., under a "nonpresence" theory of joint venture) demonstrated that the defendant was present during commission of the crime, or aided and abetted the sexual contact between the victim and the principal, and had as much opportunity as the principal to make judgments about the victim's age. [110-117]

INDICTMENTS found and returned in the Superior Court Department on February 26, 2004.

The cases were tried before *Richard T. Moses*, J., and a motion for a new trial was heard by him.

*Jason Benzaken* for the defendant.

*Shoshana E. Stern*, Assistant District Attorney, for the Commonwealth.

McHugh, J. Daniel Harris, the defendant, was indicted on charges of rape of a child by force, G. L. c. 265, § 22A, and conspiracy to commit the same offense. G. L. c. 274, § 7. At a jury trial on the substantive offense, the Commonwealth proceeded on a theory that the defendant was a joint venturer. He was convicted of the lesser included offense of rape of a child, more commonly known as statutory rape, G. L. c. 265, § 23, and sentenced to State prison. Before sentencing, he moved for

a new trial on the ground that the evidence was insufficient to prove that he knew the victim's age, a fact he maintained was essential for conviction of statutory rape on a joint venture theory. That motion and a subsequent motion to revise and revoke his sentence based on a similar contention were denied. On appeal, the defendant presses the same point. We affirm.

*Facts.* The facts of the case, viewed first in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), are as follows. The defendant's friend, Carlos Johnson, met the thirteen year old victim, Jane Smith,[1] on an eighteen and over telephone "chat line."[2] After talking on the telephone over the course of several days, Johnson and Smith arranged to meet in person at Smith's home.

Although Johnson told Smith that he would meet her alone, he, the defendant, and two other men arrived at Smith's house at about 8:30 P.M. in a car the defendant was driving. As Smith left her house to meet Johnson, her father, standing about fifteen feet from the car, yelled that she should not get in because she was "underage." There was no direct evidence that anyone in the car heard what he said.

In response to her father's entreaties, Smith returned to her house, but quickly reemerged through a different door, met Johnson, and got into the car, positioning herself in the back seat between two unidentified men. Johnson sat in the front passenger seat and the defendant drove. The first stop was a liquor store, where the defendant got out to buy some potato chips and alcohol. While the defendant was gone, Smith told the occupants that she was thirteen years old.

When the defendant returned, Smith, who thought that she and Johnson were simply going to "hang out," asked to go to a nearby park and the men agreed. She also told the men that she had a curfew and could not stay out long. Instead of heading toward the park, however, the defendant drove toward a highway. Smith asked where they were going and Johnson said that they

---

[1] A pseudonym.

[2] Smith obtained access to the "chat line" by dialing a number she obtained from a friend. After dialing the number, but before starting to "chat," she received several rules, one of which was that use of the line was restricted to people eighteen years of age and older.

were headed for Seekonk. When she asked why, he told her, "We are just going to do a drive," and handed her the liquor, telling her to take "a couple of sips." She protested, but he ultimately persuaded her to take a drink and the car's other occupants had some drinks as well.

Eventually, the car arrived at a motel where the defendant got out and tried to get a room. He was unsuccessful because the motel required a credit card and he did not have one. Undeterred, he drove to another motel where he registered successfully and returned to the car with a room key. Although Smith was fearful of going into the room, Johnson persuaded her to go, saying that they were just going to stay there for a couple of minutes and "chill."

By this time, Smith, who had taken "a couple more sips" of the liquor during the drive between motels, was intoxicated to the point where she could not walk and her legs "were, like, buckling and everything." One or more of the men assisted her into the room where they sat her on a bed. Over the next hour, all but the defendant took turns having sexual intercourse with her while she drifted in and out of consciousness. The defendant, according to Smith, remained in the room throughout, sometimes watching television and sometimes watching what the others were doing to her.

After the men finished, they helped Smith back into the car. The defendant drove back to Smith's neighborhood, where he dropped her off somewhere in the vicinity of her house. Staggering, incoherent, and smelling of alcohol, she walked home sometime after 11:00 P.M. At home, she met her father, mother, and a police officer who had been dispatched to the house in response to a report of a missing juvenile. Upon observing Smith's condition, the officer suggested that her parents take her to a hospital. They did. Emergency room physicians determined that her blood-alcohol level was .131 and that she had suffered a number of painful vaginal injuries. Anal and vaginal swabs produced sperm, but none of the resulting extractions of deoxyribonucleic acid (DNA) could be traced to the defendant.

An investigation ensued and soon led to the defendant's arrest. He told the investigating officers that Johnson was about twenty-four years old. He said that he and Johnson lived in Providence,

Rhode Island, and that, on the evening in question, Johnson had enlisted his help in obtaining a motel room because, unlike Johnson, the defendant had a credit card and Johnson thought that "hotels don't take cash anymore."

After the defendant agreed to assist, he drove Johnson, in Johnson's car, to an area with which the defendant was unfamiliar. They picked up "a girl," who turned out to be Smith, whom the defendant described as "kind of young and wearing white pants." As they picked her up, the defendant said, "you could hear someone yelling, 'You ain't going anywhere until I meet the person you're leaving with.' " At that point, Smith told the defendant and Johnson that she couldn't leave until her "dad [met] the person she was leaving with." Johnson and Smith got out of the car, apparently met her father, and then got back in.

The defendant said he first drove Johnson and Smith to a Ramada Inn hotel where, for some unexplained reason, he was unable to obtain a room. He then drove to a motel in Seekonk "where you only need an ID" as opposed to a credit card, and paid cash for a room. He escorted Smith and Johnson to the room where he "opened the door and showed them where they were supposed to go." Mission accomplished, the defendant then got back in the car and drove to Providence where he remained for about twenty to thirty minutes until Johnson telephoned and asked him to return. After driving back, he picked up Johnson and Smith and, once again, drove to Providence. Upon arrival, he got out as Johnson took his place at the wheel and, with Smith, drove off.

The defendant told the officers that he had not seen any alcohol that evening and that he had made no observations about Smith's condition when he returned to the Seekonk motel, though he noted that she "didn't say much" during the ride from Seekonk to Providence. Although the defendant did not testify at trial, he called two witnesses who said that they had seen him in Providence between approximately 9:30 P.M. and 10:00 P.M. on the relevant evening and corroborated other parts of his testimony.

Against that factual backdrop, the judge instructed the jury on the so-called presence and nonpresence theories of joint venture liability. See, e.g., Commonwealth v. Ortiz, 424 Mass. 853, 856, 858-859 (1997). The instruction did not address what

the Commonwealth did or did not have to prove regarding the defendant's knowledge of the victim's age, but defense counsel neither sought an instruction on that subject nor objected to the instruction as given.

During the course of their two-day deliberations, however, the jury twice asked the judge about what the Commonwealth had to prove regarding the defendant's knowledge of Smith's age.[3] On each occasion, the judge instructed, without objection, that conviction did not require proof that either Johnson or the defendant knew the victim's age. Between those questions, the jury announced that they were deadlocked, six-to-six, and received a charge consistent with *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973). Ultimately, the jury returned a verdict of guilty on the lesser included offense of statutory rape by joint venture.

The jury had not been asked to, and did not, indicate whether they reached their verdict on a presence or a nonpresence joint venture theory. Seizing on that omission, the defendant argues on appeal that conviction of statutory rape on a nonpresence joint venture theory requires proof that the defendant knew that sexual intercourse was planned for the room he procured for Smith and Johnson and that he knew Smith was under the age of sixteen. He argues that there was no evidence of the former and, on the latter, that the judge gave erroneous instructions in response to the jury's questions. Because there is no way to tell whether the jury convicted on a presence or on a nonpresence joint venture theory, he concludes, there is a substantial risk that the verdict represents a miscarriage of justice. We see things differently.

---

[3]The first day, the jury asked, "Does it matter if the defendant knew whether [Jane Smith] was under sixteen to drive [*sic*] the decision of joint venture?" The judge replied: "To answer your question, it is [*sic*] not. Knowledge of the alleged victim's age is not an element of the offense charged. However, as I instructed you, without going through all the other instructions, the Commonwealth must prove that the alleged victim was under the age of [sixteen], but knowledge is not an element of the offense . . . and by the way, not element of the offense either as a principal or a joint venturer." The next day, the jurors followed that by asking, "If the defendant did not know the age of the victim, would he have knowledge a crime is being committed? In other words, if he thought the victim was a consenting adult and found out after the fact that she was a minor, would he still be responsible for having knowledge of a crime? Is he required to know the victim's age in the same manner the principal would under statutory rape laws?"

*Discussion.* As noted, the crime with which the defendant was charged was rape of a child by force, as to which rape of a child is a lesser included offense. See, e.g., *Commonwealth* v. *Thayer*, 418 Mass. 130, 132 (1994). Conviction of those crimes as a principal does not require proof that the defendant knew the victim's age. On the contrary, "[i]t has long been the law of this Commonwealth that it is no defense that the defendant did not know that the victim was under the statutory age of consent. Further, it is immaterial that the defendant reasonably believed that the victim was sixteen years of age or older or that he may have attempted to ascertain her age." *Commonwealth* v. *Miller*, 385 Mass. 521, 522 (1982). See *Commonwealth* v. *Dunne*, 394 Mass. 10, 18 (1985) (conviction of statutory rape requires that the Commonwealth prove that the defendant had sexual intercourse with a person under the age of sixteen, nothing more).

Criminal liability as a joint venturer can be established either through a presence or through a nonpresence theory. Under the presence theory, liability arises if the defendant was "(1) present at the scene of the crime, (2) with knowledge that another intend[ed] to commit the crime or with intent to commit [the] crime, and (3) by agreement [was] willing and available to help the other if necessary." *Commonwealth* v. *Ortiz*, 424 Mass. at 856. Elements (2) and (3) are often described as requiring the Commonwealth to prove that the defendant " 'shared' the principal's criminal intent (i.e., 'mental state'), and may have merely stood by, but by agreement was ready to assist if necessary." *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. 376, 381 (2000).

In contrast, liability under a nonpresence theory requires the Commonwealth to show that the defendant was an accessory before the fact, i.e., that he aided and abetted the principal before the crime took place. See G. L. c. 274, § 2; *Commonwealth* v. *Mullane*, 445 Mass. 702, 716 (2006). Conviction under this theory requires " 'something more than mere acquiescence,' although not necessarily physical participation, 'if there is association with the criminal venture and any significant participation in it.'. . . Therefore, it is clear that [conviction] as an accessory before the fact [requires] not only knowledge of the crime and a shared intent to bring it about, but also some sort of act that contributes to its happening." *Commonwealth* v. *Raposo*, 413 Mass. 182, 185

(1992), quoting from *Commonwealth* v. *Morrow*, 363 Mass. 601, 609 (1973). See *Commonwealth* v. *Ambers*, 370 Mass. 835, 839 (1976) (a nonpresent joint venturer must "intentionally encourage or assist in the commission of a crime and have the requisite mental state").

"Under either theory[, however,] the critical question is whether the defendant acted with knowledge of the [crime] and with the intent to assist in the commission of that crime so as to accomplish its objective." *Commonwealth* v. *Batista*, 53 Mass. App. Ct. 642, 646 (2002). Obviously, that question poses difficulties if, as here, an element of the crime does not require that the principal have any intent, or even knowledge, of one of the facts or circumstances that criminalizes what otherwise would be noncriminal activity. In those circumstances, the question becomes whether the joint venturer must have either knowledge or intent, in this case of Smith's age, that would not be required for conviction of the principal.

No Massachusetts case has directly addressed that question. Across the nation, only two decisions appear to have addressed it, and one of those has done so obliquely. In the first case, decided in 1922, the California District Court of Appeal affirmed the "aiding and abetting" conviction of an hotel owner who rented to an underage couple a room they used for sexual intercourse. *People* v. *Wood*, 56 Cal. App. 431 (1922). The court said that the defendant "knew the illegal purpose for which the room was to be used and knowingly both aided and abetted" the principal in commission of the crime. *Id.* at 432. Accordingly, the court was not required to decide whether knowledge of the illegal purpose was always required for conviction and it offered no opinion on that issue.

In the second case, decided last year, the North Carolina Court of Appeals did express an opinion on the issue, holding that a defendant accused of "aiding and abetting" commission of the crime of statutory rape was entitled to an instruction that conviction required proof of "the defendant's intent to aid in the commission of a crime." *State* v. *Bowman*, 656 S.E.2d 638, 649 (N.C. App.), stay granted, 362 N.C. 363 (2008). "[T]he question of defendant's intent," said the court, "is not limited to whether he aided the perpetrator but whether he aided with the specific

intent to assist in the commission of the crime." *Ibid.* In that case, the defendant had invited two adult male friends to his house with their female companions, one of whom was fourteen and the other fifteen. While in the house, the friends drank liquor and then had sexual intercourse in bedrooms while the defendant played computer games in the kitchen. *Id.* at 642. Because of what it held was a specific intent requirement, the court reversed the defendant's conviction because the trial judge had refused the defendant's "request for an instruction that [he] had to know the age of the victims in order to be convicted of aiding and abetting statutory rape." *Id.* at 648.

The North Carolina decision may have derived from the court's interpretation of the term "abetting" as used in North Carolina decisions.[4] We think that Massachusetts law requires a more nuanced approach and, in any event, believe that application of a specific intent requirement to all forms of statutory rape by joint venture would be both inconsistent with the public's legitimate needs and unnecessary to protect a defendant's significant interests.

More particularly, we do not think that knowledge of the child's age is required for conviction on a "presence" joint venture theory. When the joint venturer is "present," he or she has the same opportunity as the principal to make judgments about age from the child's appearance and other circumstances attending the encounter between the child and the principal. Accordingly, the joint venturer, like the principal "does not lack the ability to comply with the law; he must simply abstain from [facilitating]

---

[4] " '[A]betting' serves to supply the mental state necessary to justify the imposition of criminal liability. This requirement looks for a criminal state of mind — specifically, it requires that the accomplice has both knowledge of the perpetrator's unlawful purpose to commit a crime, and the intent to facilitate the perpetrator's unlawful purpose." *Id.* at 648, quoting from Comment, Developments in California Homicide Law: VII. Accomplice Liability: Derivative Responsibility, 36 Loy. L.A. L. Rev. 1524, 1526 (2003). Some Federal decisions have held that the same standard is applicable to prosecutions for violation of 18 U.S.C. § 2, the Federal "aiding and abetting" statute. See *United States* v. *Sayetsitty*, 107 F.3d 1405, 1412 (9th Cir. 1997) ("[A]iding and abetting contains an additional element of specific intent, beyond the mental state required by the principal crime"); *United States* v. *Lawson*, 872 F.2d 179, 181 (6th Cir. 1989) (conviction of "aiding and abetting" a strict liability firearms offense that requires proof that the accomplice had a specific intent that the principal illegally possessed the firearm).

sexual intercourse when there is even the remotest possibility that [the principal's] partner is below the statutory age. . . . [The person] who contemplates [facilitating] intercourse with a partner of indeterminate age can resolve doubts in favor of compliance with the law without sacrificing behavior that society considers desirable." *Commonwealth* v. *Dunne*, 394 Mass. at 19-20, quoting from 78 Harv. L. Rev. 1257, 1258-1259 (1965).

To be sure, more difficult problems sometimes may arise when the Commonwealth proceeds under a joint venture theory that does not involve a "present" defendant. The nonpresence theory "is more at large, less contained," than the presence theory, *Commonwealth* v. *Mills*, 47 Mass. App. Ct. 500, 504 (1999), and "[w]e have found no Massachusetts appellate cases involving sex crimes where a defendant was convicted on a joint venture theory absent a common victim, physical presence at the immediate scene, or physical participation in the act." *Commonwealth* v. *Parriera*, 72 Mass. App. Ct. 308, 312 (2008). Therefore, if the Commonwealth proceeds on a "nonpresence" theory, avoidance of injustice may in some cases require proof that the joint venturer had more specific knowledge about the victim's age than would be required for conviction of the principal. Cf., e.g., *Commonwealth* v. *Benesch*, 290 Mass. 125, 134-135 (1935) (when an act is *"malum prohibitum* because of [a] statute, and nothing more" conviction of conspiracy to violate the statute requires proof "that the defendant knew of the illegal element involved in that which the combination was intended to accomplish," even if "proof of criminal intent is [not] required to sustain a complaint or indictment for the substantive offence"); *Commonwealth* v. *Devlin*, 366 Mass. 132, 136 n.4 (1974) (conviction as an accessory after the fact does not require that the accessory's knowledge is such that "he is able to put a name or label on the felony — only that he is aware of the substantial facts which make up the elements of the felony"). Requiring greater knowledge in appropriate "nonpresence" cases would safeguard the defendant's right to due process of law and prevent realization of the fear expressed by the defendant in this case that "[f]amily planning professionals, pharmacists, or vendors of contraception could become rapists if the products they distribute were to 'aid' someone in achieving sexual intercourse with a person under" the age of sixteen.

However one might resolve the cases the defendant conjures, he surely was not in the family-planning profession and cannot invoke any special rules that might be applicable to family planners. More important, whether one looks at the evidence in the light most favorable to the Commonwealth or in the light most favorable to the defendant, we are of the opinion that he was "present" during commission of the crime and had as much opportunity as the principal to make judgments about Smith's age. In the light most favorable to the Commonwealth, of course, the defendant was present at every single moment of the encounter and, while in the motel room, alternated between watching television and observing the principals' interactions with Smith.

The same result applies if one looks at the evidence in a light favoring the defendant. Presence is a functional concept and decided cases have never required presence throughout the venture, from beginning to end, for conviction on a presence theory. See, e.g., *Commonwealth* v. *Mahoney*, 405 Mass. 326, 329 (1989) (presence requirement satisfied where the defendant was "in the vicinity" at the time the crime was committed); *Commonwealth* v. *Sim*, 39 Mass. App. Ct. 212, 217 (1995) (presence requirement satisfied where the defendant drove with the principals to the scene of a robbery, opened a door that provided entry to the scene of the crime, then left while the robbery and accompanying murder were committed, and later returned); *Commonwealth* v. *Lafayette*, 40 Mass. App. Ct. 534, 537 (1996) (presence requirement satisfied where the defendant was present at the preliminary stages of a breaking and entering but was not physically present when the breaking and entering itself occurred); *Commonwealth* v. *Tavares*, 61 Mass. App. Ct. 385, 388 (2004) ("A defendant need not be at the scene of a crime throughout its occurrence in order to be found a joint venturer").

Here, according to the defendant, the evening's activities began when the twenty-four year old Johnson enlisted his help in obtaining a hotel room. After agreeing to provide that help, the defendant drove Johnson to a rendezvous with Smith, who "looked kind of young." Smith told the pair that she could not leave with them until Johnson met her father, a restriction backed up by her father's voice in the background. Paternal clearance obtained, the defendant drove them directly to one motel and then to a second where

he paid cash to obtain a room, escorted Johnson and Smith to the room, "opened the door and showed them where they were supposed to go." He then left, but returned shortly thereafter when summoned by Johnson and drove Johnson and Smith back to Providence.

In those circumstances, the defendant was sufficiently "present" to warrant conviction under a "presence" theory. His opportunity to make judgments about Smith's age was essentially the same as Johnson's. Despite his claim to the contrary, the defendant's association with Johnson fairly bristled with sexual adventure from beginning to end, and no one with an ounce of common sense could have doubted for an instant the nature of the activities Johnson planned for the motel room to which the defendant escorted him and Smith.

We recognize that the judge instructed the jury both on a presence and on a nonpresence theory and that our analysis means that an instruction on the latter theory, though given without objection, was unwarranted. Whatever problems such an instruction might create in a different case, we think it created no substantial risk of a miscarriage of justice here. As just detailed, even if one concludes from the defendant's account of the evening's activities that he was not "present" for the crime because he was not in the room when it occurred, there was ample evidence to support a finding that he aided and abetted the sexual contact between Johnson and Smith. See *Commonwealth* v. *Tavares, supra* at 389 ("Under [a nonpresence] theory, a defendant may be liable if he or she participated in the venture and 'sought to make it succeed' "). Moreover, the defendant's extensive interaction with Johnson and Smith before and after they entered the motel room leads us to conclude that this is not among the cases where, even on a nonpresence theory, due process would require that he have greater knowledge than Johnson had about Smith's age. We say that because, even if we were to deem the defendant "not present" for purposes of the "nonpresence" joint venture theory, he nevertheless spent sufficient time in the company of Johnson and Smith to have had every opportunity Johnson had to make judgments about Smith's age. Due process is, therefore, afforded by holding him to the same knowledge requirements applicable to Johnson.

The recent decisions in *Commonwealth* v. *Filopoulos*, 451 Mass. 234 (2008), and *Commonwealth* v. *Disler*, 451 Mass. 216 (2008), are not inconsistent with the result we reach here. In *Filopoulos, supra* at 242-243, the Supreme Judicial Court found a substantial risk of miscarriage of justice was created by jury instructions that did not convey the need for proof of criminal intent to support a conviction for violating the Child Enticement Statute, G. L. c. 265, § 26C.[5] The statute prohibits "entic[ing] a child under the age of 16 . . . to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space with the intent that he or another person will violate," inter alia, G. L. c. 265, §§ 13B, 23, which outlaws sexual intercourse with a person under the age of sixteen. Explaining, the court said, "When the statute the defendant is alleged to have intended to violate is a strict liability statute, . . . the Commonwealth is required to prove beyond a reasonable doubt, as an element of the crime of child enticement, that the defendant *intended that his advances be directed to an underage person.*" *Id.* at 238.

In *Disler, supra* at 228, the court elaborated by saying that the statute was intended to "punish only those persons who entice *with a criminal mens rea,* not those who entice with an intent to engage in consensual and constitutionally protected activity." As a result, "*[i]ntending to have consensual sexual relations with another adult would not provide the requisite criminal intent,* even if it turns out that the object of the defendant's advances was in fact a child." *Ibid.* (footnote omitted). Confining the statute in that fashion, said the court, "gives force to the Legislature's intent to protect children, appropriately gives the defendant the benefit of the ambiguity, and accomplishes all of this in a manner that avoids a potential constitutional problem." *Id.* at 229.

---

[5]General Laws c. 265, § 26C, provides in relevant part:

"(*b*) Any one who entices a child under the age of 16, or someone he believes to be a child under the age of 16, to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space with the intent that he or another person will violate section 13B, 13F, 13H, 22, 22A, 23, 24 or 24B of chapter 265, section 4A, 16, 28, 29, 29A, 29B, 29C, 35A, 53 or 53A of chapter 272, or any offense that has as an element the use or attempted use of force, shall be punished by imprisonment in the state prison for not more than 5 years, or in the house of correction for not more than 2½ years, or by both imprisonment and a fine of not more than $5,000."

For two reasons, we think that the analysis used by the court in *Filopoulos* and *Disler* does not control the outcome here. First, conviction under the child enticement statute, in contrast to conviction for statutory rape, explicitly requires an "intent" to violate designated statutes, at least two of which require no criminal intent. See *Disler* at 225-226. Imposing strict liability for "enticing" someone who turned out to be under the age of sixteen, therefore, would read the "intent" requirement out of the statute, something courts are extremely reluctant to do. See *id.* at 227.

Second, but equally important, under the child enticement statute, the offense is complete when the prohibited "enticement" occurs, whether or not a violation of the underlying statutes ever takes place. As the court discussed in *Filopoulos*, *supra*, imposing strict liability in those circumstances would create a risk that a defendant who intended to "entice" an adult for what the court characterized as constitutionally protected activity, *Disler*, *supra* at 227, would violate the statute if he or she accidentally "enticed" a child, realized the mistake, and terminated the contact before any activity of a sexual nature occurred. *Ibid.*

No such danger exists when the defendant is tried on a joint venture theory. Without the sexual intercourse that completes a violation of the underlying statute, no joint venture can occur. As noted earlier, the "present" joint venturer and the principal are on essentially equal footing when it comes to knowledge of the sexual partner's age. And, as the facts of this case illustrate, many, if not most, nonpresent joint venturers will be on an equal footing with the principal as well.

In sum, the judge's answers to the jury's questions were correct and any error in giving an instruction regarding nonpresence joint venture liability did not create a substantial risk of a miscarriage of justice.

*Judgment affirmed.*