A jury convicted the defendant on indictments charging him with child enticement and disseminating matter harmful to a minor. The defendant now directly appeals his convictions, alleging errors by the trial judge and the prosecutor. He also argues that the Commonwealth did not present sufficient evidence to support his convictions. For the reasons set forth below, we affirm.
Background. The jury were warranted in finding the following facts. In December, 2012, Mike,[2] a twelve year old boy, lived with his grandparents in Dartmouth. Mike was confused about his sexuality and sought the advice of his friend Dana,[3] who was then seventeen years old. Dana suggested that Mike contact the defendant for advice. Mike sent the defendant a friend request on Facebook; the defendant accepted.
Mike and the defendant began corresponding via Facebook's messenger feature. The two exchanged a series of messages between December 27, 2012, and January 4, 2013, that became increasingly sexually explicit. They discussed engaging in various sexual acts with each other, including oral and anal sex. The defendant initiated some of the conversations; Mike initiated others. During these exchanges, the defendant sent Mike several photographs of himself, including a photograph of his covered groin area and one of his exposed penis. The defendant repeatedly urged Mike to reciprocate by sending photographs of himself and of his penis.
The defendant also repeatedly attempted to make plans to meet Mike in person. He encouraged Mike to leave his grandparents' house, or to have his grandparents drop him off in downtown New Bedford, so that they could meet and perform the sexual acts they had discussed. In one message, Mike gave the defendant his grandparents' address; the defendant replied that he would drive by and sent Mike an aerial photograph of a house, which Mike confirmed was his grandparents' house. A few days later, the defendant messaged Mike to tell him that he was on Mike's street. In addition, when Mike told the defendant that he could leave his grandparents' house to walk in the woods behind the house, the defendant replied, "woods are thin except by the pond"; when Mike asked, "u want to do it near the pond?" the defendant answered, "better here in a bed."
A few days later, Mike's aunt discovered these messages and contacted the Dartmouth police.
Discussion. 1. Required findings of not guilty. The defendant first argues that the trial judge should have allowed his motion for required findings of not guilty as to both charges. Specifically, the defendant argues that the Commonwealth did not present sufficient evidence to prove that his conversations with Mike constituted child enticement or dissemination of matter harmful to a minor.
"In reviewing the defendant's motion for a required finding of not guilty, we examine the evidence as it stood at the close of the Commonwealth's case, viewed in the light most favorable to the Commonwealth." Commonwealth v. Schmieder, 58 Mass. App. Ct. 300, 301 (2003). "[W]e must determine whether the evidence presented at trial, together with all reasonable and possible inferences that might properly be drawn from it, was sufficient to permit a rational jury to find beyond a reasonable doubt the existence of every essential element of the crimes charged." Commonwealth v. Arroyo, 442 Mass. 135, 139-140 (2004), citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).
a. Child enticement. Subsection (b ) of G. L. c. 265, § 26C, as amended by St. 2010, c. 267, §§ 62-64, provides that "[a]ny one who entices a child under the age of 16, or someone he believes to be a child under the age of 16, to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space with the intent that he or another person will violate [one or more several enumerated criminal statutes] shall be punished."[4] The statute defines "entice" to mean, "lure, induce, persuade, tempt, incite, solicit, coax, or invite." G. L. c. 265, § 26C(a ), inserted by St. 2002, c. 385, § 3. "[E]ach of [those acts], according to the commonly accepted meaning of the term, can be accomplished by words (spoken or written) and nothing more." Commonwealth v. Disler, 451 Mass. 216, 222 (2008). While no further action is required, a person who entices must "[do] so with the intent to violate one or more of the enumerated criminal statutes" (emphasis in original). Ibid. The defendant argues that the Commonwealth presented insufficient evidence to support any of the elements other than Mike's age.
Here, the defendant enticed Mike when he invited Mike to leave his grandparents' home and meet him at a predetermined location in the woods (near the pond where he told Mike the woods were not "thin") and that they could then go to the defendant's "bed" and engage in illegal sexual activity. See Disler, supra at 230 ("[The defendant] expressly enticed [the victim] within the meaning of the statute by inviting her to come to his residence"). The invitation was implicit in the defendant's comment that "here [the defendant's home] in a bed" would be the ideal place to have sex, as well as the defendant's repeated suggestions of various schemes in which Mike could get away from his grandparents so he could meet with the defendant. These suggestions offered "specific location[s] chosen by the defendant," Commonwealth v. Hall, 80 Mass. App. Ct. 317, 325 (2011), as potential meeting spots.
In addition, the defendant's sexually explicit statements demonstrated his criminal intent. See Disler, supra at 230 ("The explicit statements he made to [the victim] about the sexual acts he wanted to perform on her ... were sufficient to evidence an intent to commit statutory rape"). Thus, the defendant completed the crime of enticement when, intending to arrange an illegal sexual encounter, he sent messages to Mike in an effort to lure Mike away from his home and grandparents to a specific meeting location. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 222. See also Commonwealth v. Harris, 74 Mass. App. Ct. 105, 117 (2009) ("[U]nder [ G. L. c. 265, § 26C ], the offense is complete when the prohibited 'enticement' occurs, whether or not a violation of the underlying statutes ever takes place").[5] Therefore, the judge did not err in denying the defendant's motion for a required finding of not guilty on the child enticement charge.
b. Dissemination of matter harmful to a minor. The judge also did not err in denying the defendant's motion on the dissemination charge. General Laws c. 272, § 28, as amended by St. 2011, c. 9, § 19, prohibits "disseminat[ing] to a [minor] any matter harmful to minors, as defined in section 31, knowing it to be harmful to minors." See Commonwealth v. Belcher, 446 Mass. 693, 695 (2006). Here, the defendant sent twelve year old Mike sexually explicit messages and photographs. The defendant knew Mike's age at the time, and from their correspondence it is clear that the defendant intentionally directed each message to Mike. See Commonwealth v. Dodgson, 80 Mass. App. Ct. 307, 311 (2011) (dissemination includes distribution of matter to single individual in private online conversation). The defendant does not contest this, but instead argues that "a single photo[graph] of a flaccid penis" does not constitute matter harmful to a minor under our decisional law. However, the defendant is mistaken in his belief that the only "matter" that could support a dissemination conviction was the photograph of his penis, as opposed to the entirety of his correspondence with Mike.[6]
The dissemination statute states that matter is harmful to minors if
"it is obscene or, if taken as a whole, it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors."
G. L. c. 272, § 31, as amended through St. 1982, c. 603, § 6.[7] To prove that matter is obscene, the Commonwealth must show that, "taken as a whole it (1) appeals to the prurient interest of the average person applying the contemporary standards of the county where the offense was committed; (2) depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value." G. L. c. 272, § 31, as amended by St. 1982, c. 603.
Here, the defendant's correspondence with Mike "makes no pretensions to 'serious literary, artistic, political or scientific value.' " Commonwealth v. Mienkowski, 91 Mass. App. Ct. 668, 672 (2017). Viewing the entirety of the correspondence in context, the descriptions of the sexual acts that the defendant planned to engage in with Mike describe sexual conduct in a patently offensive way that plainly appeals to the prurient interest of an average person. See Commonwealth v. Plank, 378 Mass. 465, 469 (1979) ("[T]he issue of patent offensiveness is to be decided in context"). The entire conversation, particularly when viewed in context with the messages exchanged before and after December 28, 2012, demonstrated the defendant's efforts to get Mike to send nude or semi-nude photographs of himself and to meet and engage in sexual activity.[8] Thus, "it is 'impossible to believe that any competent adult would be surprised that this conduct would be proscribed.' " Mienkowski, supra at 673, quoting from Commonwealth v. Nuby, 32 Mass. App. Ct. 360, 363 (1992). Therefore, we conclude that the evidence was sufficient to establish that the matter the defendant disseminated to Mike was obscene, and thus harmful to minors.
2. Evidentiary issues. The defendant next argues that the trial judge erroneously allowed testimony regarding his sexual relationship with Dana, then a minor, which he claims constituted prejudicial propensity evidence. He also argues that it was improper for the Commonwealth to cross-examine the defendant's technology expert, over his objection, regarding the presence of sexually explicit photographs on the defendant's cellular telephone.
a. Relationship with Dana. Generally, evidence of a defendant's prior bad acts is inadmissible for the purpose of demonstrating the defendant's propensity to commit the crimes charged. Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). However, such evidence may be admissible for another purpose, such as "establish[ing] motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation." Ibid. See Mass. G. Evid. § 404(b) (2018). "The question of admissibility of bad act evidence and whether a stated purpose is permissible will largely depend on the circumstances of each case, and admissibility is properly left to the sound discretion of the trial judge." Commonwealth v. Butler, 445 Mass. 568, 574-575 (2005).
Here, the development of the defendant's relationship with Dana mirrored the trajectory of the defendant's relationship with Mike. Although the defendant and Dana first met in person, they subsequently engaged in correspondence via Facebook and text messaging. Like the defendant's conversations with Mike, those exchanges began platonically, but then became sexually explicit. Eventually, the defendant and Dana, then age seventeen, engaged in physical sexual activity. This evidence was relevant because one of the elements that the Commonwealth must prove in a child enticement prosecution is that the defendant intended to engage in criminal activity. See Disler, 451 Mass. at 222. Since intent is often not susceptible to direct proof, the Commonwealth must frequently resort to alternative sources of evidence. Commonwealth v. Casale, 381 Mass. 167, 173 (1980). Here, the similarity between the defendant's relationships with Dana and Mike and their temporal proximity[9] were probative of his intent to engage in sexual activity with Mike. See Commonwealth v. Wallace, 70 Mass. App. Ct. 757, 765 (2007) (defendant's possession of photographs of young girls probative of whether he intentionally touched young girl). Furthermore, the defendant's relationship with Mike began through Dana, who put Mike in touch with the defendant when Dana encouraged Mike to speak with the defendant after Mike confided in Dana about his sexual confusion. Thus, the judge properly admitted evidence of the defendant's sexual relationship with Dana because it "was inextricably intertwined with the facts of the case and essential to the jury's understanding of the entire picture." Commonwealth v. Ryan, 79 Mass. App. Ct. 179, 188 (2011).
b. Cross-examination of expert. The defendant also argues that it was improper for the prosecutor to cross-examine the defendant's technology expert regarding the presence of sexually explicit photographs on the defendant's cellular telephone. Again, while evidence may not be used to suggest a defendant's propensity to commit a certain crime, "it is admissible for other relevant probative purposes." Commonwealth v. Tobin, 392 Mass. 604, 613 (1984) (quotation omitted). Here, part of the defense strategy was to suggest that someone other than the defendant might have sent Mike the inappropriate messages and photographs. It is clear that the prosecutor's purpose in questioning the expert on the photographs was to rebut such a suggestion, not to suggest that the defendant was predisposed to commit the charged conduct. See Commonwealth v. Avila, 454 Mass. 744, 754-756 (2009) (prosecution entitled to elicit testimony that rebuts defendant's defense). Thus, there was no error.
3. Unanimity instruction. Finally, the defendant argues that the trial judge should have given the jury a specific unanimity instruction regarding the child enticement charge, because jurors may have convicted the defendant without agreeing on which of the enumerated offenses he intended to commit when he enticed Mike. We disagree. While it is generally true that "a specific unanimity instruction is appropriate when there is evidence of alternate incidents that could support the charge," Commonwealth v. Federico, 70 Mass. App. Ct. 711, 719 (2007) (quotation omitted), the defendant is mistaken that one was required here. In this case, there was no evidence of separate incidents that could serve as a basis for the defendant's conviction. Rather, "[the defendant's] conviction was based on a series of electronic 'instant messages' he exchanged with [Mike]." Disler, 451 Mass. at 218. Thus, the general rule that "when a jury are instructed on two different theories of guilt and return a general verdict, there must be a new trial if the evidence could permit the jury to convict the defendant under only one theory," is not applicable here, because the enumerated crimes in the enticement statute "are not separate theories .... [They] are simply different ways of proving that the defendant" possessed the requisite criminal intent. Commonwealth v. Oquendo, 83 Mass. App. Ct. 190, 193-194 (2013).
Judgments affirmed.

A pseudonym. See G. L. c. 265, § 24C.

A pseudonym.

This case did not implicate every statute that could underlie a prosecution for child enticement. Here, the judge informed the jurors that they could convict the defendant only if the Commonwealth proved the defendant's intent to violate at least one of the following statutes: G. L. c. 265, § 13B (indecent assault and battery on a child under fourteen); G. L. c. 265, § 22A (rape of a child); G. L. c. 265, § 23 (rape and abuse of a child); G. L. c. 272, § 16 (open and gross lewdness); G. L. c. 272, § 29A (posing or exhibiting a child under eighteen in a state of nudity or sexual conduct).

Despite the defendant's assertion to the contrary, it was not legally or factually impossible for the defendant to commit child enticement simply because Mike's grandparents would not let him leave the house. "Legal impossibility occurs when the actions which the defendant performs or set in motion, even if fully carried out as he desires, would not constitute a crime. Factual impossibility occurs when the objective of the defendant is proscribed by the criminal law but a [physical] circumstance unknown to the [defendant] prevents him from [accomplishing] that [intended] objective." Commonwealth v. Bell, 67 Mass. App. Ct. 266, 270 (2006) (quotations omitted), S.C., 455 Mass. 408 (2009). As stated supra, "the offense [was] complete when the prohibited 'enticement' occur[red]," even though no violation of the underlying statutes took place. Harris, supra at 117. Here, it was clearly legally and factually possible for the defendant to commit child enticement. This also necessarily dispenses with the defendant's argument that the judge unconstitutionally expanded the child enticement statute by punishing the defendant for an attempted enticement, rather than a completed act.

"Matter" includes "any electronic communication including ... electronic mail, instant messages, text messages, and any other communication created by means of use of the Internet." G. L. c. 272, § 31, as amended by St. 2010, c. 74, § 2.

The judge's jury instructions apparently conflated the "obscenity" prong of the statute with the "alternate" prong, essentially giving the jury only the option to convict the defendant under the obscenity test. See Commonwealth v. Militello, 66 Mass. App. Ct. 325, 331-332 (2006) (describing "obscenity test" and "alternate prong").

For example, on December 27, 2012, the defendant sent Mike a photograph of his covered groin area, prompting Mike to respond, "I really want that in my mouth." The defendant said that he "wish[ed] [Mike] could send a pic," and asked Mike to "describe [his] penus [sic]." The defendant then told Mike he was "leaking so much pre-cum." Similarly, on December 29, when Mike told the defendant he "just got done jacking," the defendant asked Mike to "save [him] some" and "wish[ed]" they would have oral sex "eventually." The defendant then said, "Dude pre-cum already ... DAMN my dick likes you and I haven't even seen your tool yet." When Mike says that he does not want to show his penis until they meet in person, the defendant persists and asks Mike to "snap a quick one" and called him "such a tease" when Mike refuses.

The defendant's relationship with Dana predated his correspondence with Mike by approximately one month.